## HENRY S. McCOMBS *v.* JAMES MEGRATTEN.

As to the degree of skill which a party who furnishes a certain amount of linen to the other party under an agreement that the latter shall make and deliver to him as many knapsacks out of it, as it will make according to the regulation standard of the Government, has a right to expect and require of him in the cutting and making of them in order to prevent any unnecessary waste of the material furnished for the purpose, the general principle and rule of law is that in all such cases where skill is required, it is to be understood to mean ordinary skill in the particular business or employment which the other party undertakes, or in which he is engaged, for he is not presumed to engage for extraordinary skill which may belong to few men only in his business or employment, or for extraordinary endowments, acquirements or qualifications to fit him in the highest degree for it. Reasonable skill therefore constitutes the measure of his engagement and responsibility in regard to the work undertaken by him, unless he has professed to the highest degree of skill in regard to it and expressly engaged to do it in the best manner.

It is also a well settled principle of law that where the particular business, employment, or work to be done is such as to require skill in the person who undertakes it, if in such a case a party is employed to undertake it who is known to the party employing him, not to possess any skill in it,

or that it is not and never has been his particular art, business or employment, and that he makes no pretensions to skill in it, and the employer with full notice or knowledge of that fact, trusts him with the undertaking, the party so employed is bound only for a reasonable exercise of the skill which he possesses, or the judgment which he can employ in it ; and if any loss ensues from his want of due skill in it, he is not in law chargeable with it or liable for it, if he did the work with such reasonable skill as he possessed in the art or business, and with the same care and diligence which he would have applied to the undertaking, had he been doing it for his own use and benefit alone under a direct contract with the Government and supplying the material himself.

THIS was an action of assumpsit with the usual pleas, by Henry S. McCombs, who in the summer or fall of 1861 had entered into a contract to furnish the Government with a large number of soldier's knapsacks, against James Megratten who had agreed to make at least fifty thousand of them for him. There was no dispute as to the terms of the contract, although not in writing, by which it was agreed between them that McCombs was to furnish the linen required and Megratten was to make and deliver to him fifty thousand, at least, according to the standard prescribed in that respect by the regulations of the War Department, a pattern of which McCombs was also to furnish, and as many more as the material which he furnished would make, for nineteen cents apiece. Megratten had never made any and did not know what quantity of linen it would require to make one, but after the plaintiff had procured and furnished him with one as a pattern and he had ascertained the dimensions of it, he informed the plaintiff that it would take two yards and a little more than an eighth of linen twenty-two inches wide to make one, when the latter told him he would allow him two yards and a quarter for making each knapsack, and afterward furnished him with one hundred and fourteen thousand nine hundred and fifty-eight yards of linen, but of unequal widths, for the purpose, some pieces exceeding and some of less than twenty-two inches in width, but which in the aggregate averaged that width, at least. The defendant afterward made and delivered to the plaintiff forty-eight

thousand nine hundred and twenty-eight knapsacks, and the action was on the breach of the contract and for the damages which the plaintiff alleged he had sustained by his failure to make and deliver fifty thousand, at least, and as many more as might have been made out of the quantity of linen furnished by him, which according to the testimony of the witnesses on his behalf, varied in the estimates made by them, on the assumption that the whole quantity of linen furnished averaged in width twenty-two inches, and had been cut and used with as much care and skill as possible, from fifty thousand seven hundred and ten, to fifty-five thousand eight hundred and thirty-eight, as to the whole number which might have been made out of it. Their concurrent testimony, however, was to the effect that the large experience of the manufacturers of soldier's knapsacks during the war, had reduced to a positive and mathematical certainty, the precise quantity of linen according to the different widths usually found in the markets of the country, it required to make one of the present size and and pattern, and that according to that rule, it would take just two yards and ten inches of such material, twenty-two inches wide to make one ; whilst on behalf of the defendant it was proved that he frequently admonished the cutters and makers in his employ, to exercise their utmost care and skill in cutting and making of them, so as to avoid any unnecessary waste of the material, and also that the Government standard with regard to the size and form of them had been altered in 1861, according to which it required two yards and sixteen inches of linen twenty-two inches wide to make one, and that the plaintiff after the making of the contract had adopted and introduced the new standard into the defendant's establishment and had required his to be made in conformity to it. There was also no little conflict and discrepancy in the testimony of the witnesses in regard to their observation and experience with reference to the verification of the lengths and the number of yards marked by the makers on pieces of linen and imported with them, by actual measurement after they

had bought them, some stating that they usually found them remarkably correct, and others that they had almost invariably found them short from one eighth to one yard in length.

*D. M. Bates*, for the plaintiff, contended that there were but two questions for the jury to consider and decide in the case upon the evidence before them, and the first was, how many knapsacks of the kind required by the regulations of the government, would the quantity of material furnished by the plaintiff under the agreement, have made with the exercise of proper skill, care and attention on the part of the defendant in the cutting and making of them ? And the second was, what amount of damage had the plaintiff sustained by reason of the failure of the defendant to make and deliver fifty thousand, at least, but a much greater number than that, according to the testimony of all the best informed witnesses on that point who had been examined in regard to the matter. The defendant had contracted after proper time for consideration and reflection on the subject, and for a price quite as reasonable and liberal as any other maker in the country at that time was receiving for such work, and at which price, as the evidence had shown as to what they afterward cost him, he was to realize a clear profit of four cents per sack, to make and deliver at least fifty thousand of them out of the quantity of linen furnished by the plaintiff for the purpose, and as many more as the material would make ; and but for the liberality of the plaintiff, he would have agreed to make and deliver the specified number, at least, out of much less material than he received for the purpose. Such an agreement, of course, implied a declaration on his part, that he was able to do so, and was equivalent to a contract with the plaintiff that he was capable of doing it. But the proof in the case, as well as the fact just adverted to, would save them the necessity of stopping to inquire what degree of art or skill he possessed to fit him for such an undertaking in particular, although as it had been shown,

he had been in his time a very good tailor, it was certainly to be presumed that he ought to have known better than most men, how much of the material about which he was so gravely contracting, it would require to make a knapsack after carefully taking the measure of it. His calculation was two yards and a little more than an eighth of a yard, but the plaintiff who, of course, possessed no special knowledge or judgment in regard to such a matter, but to make the quantity amply sufficient for fifty thousand at least, enlarged his estimate to two yards and a quarter, and upon that estimate furnished him with one hundred and fourteen thousand nine hundred and fifty eight-yards of linen averaging twenty-two inches in width, but out of which the defendant had made and delivered to him only forty-eight thousand nine hundred and twenty-eight knapsacks. None of the witnesses who had been examined on either side, who professed to know, how many that quantity of material would make, and ought to have made with proper skill and care in the cutting and making of them, had estimated the number at less than fifty thousand seven hundred and ten, whilst another who had had much experience in the business in another section of the country, had estimated the quantity as high as fifty-five thousand eight hundred and eight. The discrepancy in the two estimates was large and striking, but the wide margin which it presented might be accounted for on the score of the different degrees of skill and economy with which the material may be cut and used in the manufacture of such articles ; but after making the widest and most ample allowance for all that, and of such a liberal margin, it would be found that the defendant in point of skill, prudence and economy in making his, had fallen much below anything of the kind either of the witnesses had ever before heard of. They were therefore not claiming or seeking in the action to hold him responsible for the exercise of the highest degree of skill and care practicable, or possible in the cutting and making of them, but he certainly was answerable, at least, for the possession and

exercise of ordinary skill and capacity in that particular; and if he had less than any body else that ever attempted to make them, he would be justly and legally liable to the plaintiff for any loss which he had sustained under the contract in consequence of his engaging and undertaking to do so much more than he had the skill or ability to accomplish.

It would be for the jury to ascertain and determine from the evidence, and particularly from the testimony of the witnesses who were competent to furnish the basis on which the estimate and calculation should be made, what number of knapsacks, at least, it was the obligation and duty of the defendant, with the exercise of a fair, ordinary and reasonable degree of care and diligence, skill and capacity in such an undertaking upon his part, to have made and delivered to the plaintiff under the agreement, out of the quantity of material furnished by him for the purpose. He then proceeded to state the results of certain calculations which had been made on the basis of two yards and a quarter to the sack by the counsel for the plaintiff, which after making due allowance for loss in the measure of material, as possible under the testimony of the witnesses for the defendant, which showed the number he should have made was fifty-three thousand eight hundred and forty-six, and that consequently the loss which the plaintiff had thereby sustained in knapsacks, amounted to the number of four thousand nine hundred and eighteen. The measure of the damages would be the profit which the plaintiff would have realized on that number if they had been duly made and delivered by the defendant under the agreement, and the amount of which could be readily ascertained by the jury from the evidence before them as to what those made and delivered actually cost the plaintiff and the price then paid for them by the Government.

*Patterson* for the defendant. The defence would be, that the defendant was liable only for ordinary and reasonable skill and diligence under the contract in working up the

material furnished by the plaintiff, in good ·faith into as many knapsacks as it would make. He was not liable under the contract for the exercise of the highest degree of skill and diligence in the execution of the work undertaken by him, and in the application of the means supplied for the purpose. And he should, moreover, contend, for it was a sound and well settled principle of law, that if a person engages in a new or novel branch of manufacture and employs a novice like himself in the business, or who has little or no practical experience in it, and makes no profession to have any special art or skill in it, he has no right to expect and require of him the same degree of skill and proficiency in it, or in the execution and management of the work contracted to be performed by him, as he may ordinarily demand of one who has been bred to the business and professes to understand it, and who may therefore be presumed to be possessed of the ordinary skill and ability to perform the work undertaken by him to the reasonable satisfaction of his employer. And he would so ask the court to instruct the jury. *Story on Bailment, secs.* 423, 433, 434, 435. The evidence showed that the undertaking was an entirely new business to the defendant, in which he had no previous practice or experience, and that such was the case, was well known to the plaintiff when he employed him to do the work. But he did not mean to admit by any thing he had said in regard to the principle just stated, that the defendant had failed in any respect to discharge the whole duty and obligation devolved upon him by the contract, or to perform the work in entire good faith or to make as much out of the material furnished him, as any other person, however expert and skillful in the cutting and making of knapsacks, could have possibly made out of it. It would be observed that no charge, complaint or allegation of fraud or dishonesty had been made, or even insinuated against the defendant in regard to the transaction, but the whole basis of the action was upon his alleged want of ordinary skill and capacity and want of ordinary care and prudence in the cutting and

making of them, in consequence of which it was further alleged a considerable portion of the material was unnecessarily wasted, and that he had not only failed to make and deliver at least the number specifically contracted for, but also many more than even that, which otherwise might have been made out of it. Although there was some contrariety in the proof on that point, he should confidently rely on the evidence adduced on behalf of the defendant to show, and should therefore as confidently contend before the court and jury, that he certainly made and delivered as many knapsacks out of the number of yards of linen actually furnished him, as any other maker of ordinary care, skill and experience in the cutting and making of them, if not as many as the most experienced, expert and skillful master of the art could possibly have produced out of it. He then reviewed the evidence at length and closed with the statement of a calculation made by him on the basis of two yards and sixteen inches of stuff twenty-two inches wide, with allowance made for the change in the standard pattern of the Government furnished by the plaintiff after the agreement was entered into, and for deficiency in the length of the pieces of linen supplied by him, by which he had reached the result and the conclusion that the defendant had made and delivered all the knapsacks that could possibly have been made out of them.

*Gordon,* for the plaintiff, replied.

*The Court, Gilpin C. J.,* charged the jury, that the calculations of counsel in such a case were not evidence, and so far as their verdict should depend on any such method of determining the result of their deliberations upon it, the jury should make them for themselves after properly considering and weighing all the evidence before them in the case. The testimony of the witnesses as to the quantity of material, or linen twenty-two inches wide which it would require to make a knapsack according to United

States regulation standard at that time, was conflicting and contradictory in its character, and if reconcilable at all, it could only be done so far as the evidence goes, in some degree perhaps, upon the ground that there were two patterns of the regulations referred to, as a change, it was stated, had been introduced in the standard about the time the agreement was entered into between the parties, increasing the size of it slightly, to the former of which some of them may have referred, whilst the others may have referred to the latter when speaking in relation to that matter. But in accordance with the request of the counsel for the defendant, the court would say to them that so far as that might be involved or concerned as matter of importance in the consideration of the case by them, if there was such a change made in the standard, and the plaintiff after the making of the agreement required the work to be done according to the new and enlarged pattern or standard, he would not be entitled under the agreement to demand of the defendant more knapsacks than could with the exercise of reasonable and ordinary skill, care and prudence have been made out of the material furnished by him according to that standard or pattern. It might not be easy or practicable perhaps, in the light of the evidence, to determine with certainty the precise quantity of linen twenty-two inches in width, which was necessary to make a knapsack according to the new standard spoken of by the witnesses for the defendant, since they varied in their estimates from two yards twelve inches to two yards sixteen inches ; but which one of the witnesses for the plaintiff estimated at two yards and a quarter, and others at two yards and ten inches, and who said it had been reduced to a mathematical certainty by the practical experience of large makers of them during the present war, that the latter quantity was sufficient to make one. The delivery of the material by the plaintiff to the defendant for the purpose agreed on between them, constitutes what is termed in law a bailment, and in regard to the degree of skill which the plaintiff had a right under the agreement to

expect and require of the defendant in the cutting and making of the articles in question in order to prevent any unnecessary waste of the material furnished by him, the general principle and rule of law is that in all such cases where skill is required, it is to be understood to mean ordinary skill in the particular business or employment which the party undertakes, or in which he is engaged, for he is not presumed to engage for extraordinary skill which may belong to few men only in his business or employment, or for extraordinary endowments, acquirements, or qualifications to fit him in the highest degree for it. Reasonable skill therefore constitutes the measure of his engagement and responsibility in regard to the work undertaken by him, unless he has professed to the highest degree of skill in regard to it and expressly engaged to do it in the best manner. It is also a well settled principle of law that where the particular business or employment or work to be done is such as requires skill in the person who undertakes it, if in such a case a party is employed to undertake it who is known to the party employing him not to possess any skill in it, or that it is not and never has been his particular art, business or employment, and that he makes no pretensions to skill in it, and the employer with full notice or knowledge of that fact, trusts him with the undertaking, the party so employed is bound only for a reasonable exercise of the skill which he possesses, or the judgment which he can employ in it; and if any loss ensues from his want of due skill in it, he is not in law chargeable with it, or liable for it.

The jury had heard the agreement and the terms of it as detailed in the evidence, and it would be for them to consider and determine whether the defendant specially or expressly agreed to make and deliver to the plaintiff out of the material to be furnished by him, all or as many knapsacks as the most experienced, skillful and expert maker could have made out of it, for if there was such a special agreement on his part, and the jury were further satisfied that he had not done that, he of course, had failed

to perform such an agreement on his part, and the plaintiff would be entitled to recover; or if the jury should be satisfied from the evidence that he did not specially agree to cut and make it into knapsacks with such extraordinary skill and care as had just been mentioned, but that his agreement and undertaking was to make out of it and deliver to the plaintiff fifty thousand, at least, and as many more as it would make, allowing two yards and a quarter of the stuff to be furnished by the plaintiff to be sufficient to make one, and were also satisfied that the material afterward furnished by the plaintiff for the purpose, was sufficient at that rate, to make fifty thousand, at least, then he had failed to perform such agreement, and the plaintiff would be entitled to recover, for there was no dispute about the fact that he had not made and furnished fifty thousand, at least. But if, on the contrary, they should believe from all the evidence before them, that no such agreement was entered into between the parties, as has just been stated, but that the agreement simply was that the defendant would make and deliver to the plaintiff out of the linen to be furnished by the latter for the purpose, fifty thousand knapsacks, at least, and as many more as it would make, without being bound to make every two yards and a quarter, or any other specific measure or quantity of it into one, and that the plaintiff knew at the time when such agreement was entered into, that the defendant had never before been engaged in the cutting and making of knapsacks, and did not possess, or pretend to skill in that particular business or employment, and that the defendant cut and made them with such reasonable skill as he possessed in the art or business of making them, and with the same care and diligence to save in the material and avoid any unnecessary waste of it in the cutting and making of them, which he would have applied to the undertaking had he been making them for his own use and benefit alone under such a contract with the government, and supplying the material himself, and made and delivered in good faith to the plaintiff, all the knapsacks he could make out of the

material furnished him, to the best of his skill and ability, then the plaintiff would not be entitled to recover, and their verdict should be for the defendant. If, however, the jury should find that although such was the agreement, understanding and intention of the parties, and that such was the undertaking and engagement of the defendant, he had nevertheless not complied with and performed it in good faith with such reasonable skill and to the best of the ability which he possessed in that kind of employment, and with that ordinary degree of prudence, care and diligence which had just been defined by him, it would be their duty to render a verdict against him and in favor of the plaintiff. And if the verdict should be in favor of the plaintiff in either of the several aspects in which he had thus presented the case for their consideration, it should be for the difference between what would have been the total cost to the plaintiff of such additional knapsacks, as it should be found that the defendant ought to have made and delivered, but failed to make and deliver out of the material actually furnished him by the plaintiff for the purpose, and the amount he would have received for them under his contract price with the government, the evidence as to which they had before them; and for that purpose it would also be their duty to ascertain from all the evidence before them what was the actual quantity of the linen in question which was furnished under the agreement by the plaintiff to the defendant.

The defendant had a verdict.